First case on our call this morning is Agenda No. 11, Case No. 107-402, In Re. K.E.F. a Minor, People of the State of Illinois Appellant v. K.E.F., etc. Appellants. Ms. Wong, you may proceed. Good morning, Your Honors, and may it please the Court, Counsel. My name is Sherry Wong, and I'm an Assistant Attorney General here on behalf of the people of the State of Illinois. Your Honors, the issue in this case is a fairly narrow one. The issue is not whether the trial court correctly excluded the victim, K.M.F.'s, out-of-court statement. Rather, the issue is simply whether at this stage of the proceedings the trial court's order is even reviewable by an appellate court. To use the language used by this Court in People v. Martin, the trial court's order ought not to be totally immunized from appellate review, and that people should be allowed to appeal the trial court's order for the following two reasons. First, Supreme Court Rule 604A1 applies to delinquency proceedings under the Juvenile Court Act. The appellate court incorrectly held that Rule 604A1 does not apply to delinquency proceedings, which was contrary to this Court's decision in People v. DeJesus, which held that Supreme Court Rule 660A incorporates Rule 604A1 into delinquency proceedings. Second, the people should be allowed to appeal the trial court's order because applying Rule 604A1 to this case, the trial court's order had the substantive effect of suppressing evidence. With respect to this question, the issue is, again, not whether the trial court's order was correct. It is whether the admission of the evidence violated the confrontation clause. Rather, the issue is whether the trial court's order had the substantive effect of suppressing evidence. The fact that the trial court's order- Ms. Long, can I ask you a factual question? Kyle argued it was the State's failure to even attempt to question KEF. That's correct. And that is true, right? That's correct, Your Honor. Did the- and that was concerning the allegations that prevented the introduction of the evidence. That's correct. All right. Did the State ever explain anywhere in the record why it refused to question KEF? It did, Your Honor. On page 41 of volume 2 of the record, the prosecutor essentially said that the reason that he did not want to question KMF regarding the substance of her out-of-court statement was because he wanted to avoid having- he wanted to avoid having to have her required to testify about the details of the allegations in open court. Especially against her brother? That's correct, Your Honor. Given the fact that all the parties were there in court, that she would have to testify about the allegations in front of her family, in front of the court reporter, in front of all, you know, the interested parties in counsel, the prosecutor wanted to avoid further traumatizing this girl by having to have her testify about these traumatic allegations both on direct examination and on cross-examination. And the reasonableness of the prosecutor's decision is reflected by the documents that we have in the record. However, didn't the prosecutor also indicate that they would have no objection to the defense going beyond the scope of direct and, in effect, asking those very questions? That's correct, Your Honor. The prosecutor did say that they would have no objection to having Respondent's Counsel question her regarding the substance of the allegations on cross-examination. But there is something to be said about not wanting to have her testify about these allegations also on direct examination, essentially requiring her to have to testify about it twice. And the reasonableness of this decision is reflected by what we have in the record. Prior to trial, Respondent's Counsel had filed a motion to quash the subpoena that had been served on KMF. And in that motion, the parents' counsel had stated that KMF had been in counseling since April of 2006 and that they did not believe that it was in her best interest to have to testify in court regarding the details of these allegations because of all the parties that would be present, because her brother would be present. It would require having to go through all this, which would further traumatize her. In addition, we also have KMF's statement, which is in the record in the form of a recorded interview. And when viewing the statement, KMF is in an environment where it's supposed to be comfortable for her to talk about these types of allegations. She's talking to an interviewer who's trained to discuss these types of things. And she still has difficulty discussing the allegations and talking about what exactly it was that her brother had done to her. So it was reasonable for the prosecutor, based on all this information, which he presumably was aware of, to not want to have to have her testify to these allegations, both on direct examination and cross-examination. Just as an initial side note, we're arguing here that the people's reason for not complying with the trial court's order, whether correct or not, really goes more to the correctness of the trial court's ruling, not to whether the order was appealable under Rule 604A1. Those issues, whether or not the prosecutor correctly chose not to ask these questions on direct examination, really goes more to the merits of the people's underlying appeal, rather than to the substantive effect of the trial court's order in this case, which we argue had the substantive effect of suppressing evidence. But isn't it KEF's argument that, first of all, if they would have had to ask the questions, they were making the case for the State? And secondly, the State was not recruited from presenting this evidence. It would have had to have done it another way by asking the questions. So it did not have the effect of terminating the State's case. Well, that's correct, Your Honor. Respondent is arguing that, and this was an issue that was in the trial court, that by requiring them to have to ask her these questions about the allegations, that was requiring them to have to do the State's job for them, that they would have to prove the allegations in the delinquency proceeding. And the trial court in this case was concerned about the State resting its entire case on one hearsay statement. But there's no reason that the prosecutor couldn't rely on this one hearsay statement to prove its case. By not asking her questions on direct examination and not having her testify about these allegations, that really goes more to her credibility as a witness. And that could even be construed as perhaps a weakness in the State's case that the trial court could consider when deciding whether or not to believe her allegations. In addition, Respondent relies on this Court's decision in People v. Truitt in arguing that the trial court's order did not have the substantive effect of suppressing evidence, but rather it affected more the manner in which the people could present the evidence. This Court's decision in Truitt, however, is distinguishable from this case. And also the reasoning that this Court applied in Truitt does not apply in this case. In Truitt, the people wanted to present a lab report without presenting the testimony of the chemist who prepared the lab report. And this Court held that that was not a suppression order within the meaning of Rule 604A1. The order actually had the opposite effect of a suppression order because by requiring the State to present the testimony of the chemist, the jury would actually have a much more thorough picture of the reasonable facts in the case than if the State were simply to be able to rely on a piece of paper. That reasoning does not apply in this case because here the people actually presented the testimony of KMF, unlike the chemist in Truitt who did not testify. They presented her testimony. She testified on direct examination, answered all the questions posed to her on direct examination, then tendered her to response counsel where she answered, again, all the questions that were posed to her on cross-examination and then answered all the questions that were posed to her by her parents' counsel. So unlike the chemist in Truitt who did not, there was no opportunity to cross-examine him at all, KMF was subject to a full, and even though they did not question her regarding the substance of the statements, a full cross-examination. And it was respondent's counsel's decision not to question her regarding the substance of those statements. That was their decision and it was not the fault of the people that they did not want to question her. We're arguing that they, I mean, again, this goes more to the merits of the trial court's decision. They're not required to ask her about these questions because KMF was subject to cross-examination in this case. So we believe there's actually no confrontation clause problem. And this situation is actually more similar to the situation that this court was presented with in People v. Phipps than in People v. Truitt. In Phipps. In these situations where there's special reasons why the state does not want to put its witness on, on a case-by-case determination rather than just deciding whether it's a final judgment, the Rule 606A speaks to final judgments or interlocutory orders, not interlocutory orders. I'm sorry. I'm not sure I understand your question. Would these be determined on? Would you leave us, if this court were to rule in your favor, wouldn't it pretty much say that we will consider these cases on a case-by-case basis, the special circumstances such as the state's reasons for not putting on its witness would have to be considered rather than just simply interpreting the rule? Well, in criminal cases where Rule 604A1 applies, each case is judged on an individual case-by-case basis. The relevant question in each of these cases is whether or not the trial court's order had the substantive effect of suppressing evidence. And essentially the prosecutor's reason for not complying with the order does not really affect the effect of the trial court's order. What this court looks at is whether the order operated to prevent evidence from being admitted to the fact finder. And at the moment that the trial court's order was entered, we look at what the effect of that order was. So in fifths, what happened was the trial court held that unless witnesses took the affirmative act of waiving privilege and then if those witnesses did not take the affirmative act of waiving privilege, those witnesses would not be allowed to testify. That was a conditional order. And this court held that that was a suppression order within the meaning of Rule 604A1. Because even though further acts were required in order to have this evidence admitted, what we were looking at was the substantive effect of the order. And at the moment that the order was entered, the evidence was not going to be admitted. Here, at the moment that the trial court entered its order, the evidence wasn't going to come in. The trial court was not going to consider that evidence. So it had the effect of suppressing evidence. And so in each of these cases, there is going to be a case-by-case determination regarding whether or not the order had the effect of suppressing evidence. But we would be looking to the language of the rule. This court can look to whether or not the order did in fact have the effect of suppressing evidence, but it wouldn't really look to the reason that the people chose not to, the conditionality of the order, which this court in fifths decided it would not look at. It only looks at the effect of the order. Ms. Long, you know the public policy arguments that were raised by the defendant with respect to juvenile proceedings and moving in an expeditious fashion. If we were to agree with you and apply Rule 604A1 to juvenile delinquency proceedings, is there some approach that you would ask this court to take to streamline those appeals to somehow avoid delays? Certainly this court could adopt a similar procedure that it adopted with respect to child custody cases, adopt a new rule which, as in Supreme Court Rule 306A, which would allow this type of delinquency interlocutory appeal to be expedited. And that would not be overly burdensome on the appellate courts, given that these types of procedures already exist. Supreme Court Rule 306A talks about how these appeals can be expedited by setting expedited briefing schedules, having memoranda filed instead of briefing, having the appellate court issue its decision within 150 days after the filing of a notice of appeal. All of these types of procedures could be implemented, which would allow these types of appeals to be expedited, which would then minimize any unnecessarily prolonged delay, which could potentially undermine a juvenile's rehabilitation interest. In addition, even if this court didn't really want to adopt a new rule, Supreme Court Rule 311 already exists, which allows for parties to file a motion for an expedited appeal. And should the appellate courts find that there is a good reason to expedite the appeal, then the court could place it on the accelerated docket and the appeal could be expedited in that fashion. Why shouldn't this court end our inquiry with Rule 660, that says only final judgments in juvenile delinquent proceedings are appealable? Well, Your Honor, this court has held that the rule should be read as a whole. And 660A arguably does just mention final judgments, and read in isolation really only refers to final judgments. But this court can also look to Rule 604A1 in looking to whether or not interlocutory appeals should be available in delinquency proceedings. And this court did that in People v. DeJesus. In DeJesus, this court specifically said that pursuant to Rule 660A, Rule 604A1 applies to delinquency proceedings. And in DeJesus, this court addressed an order that was entered by a juvenile court judge in a proceeding that was under the Juvenile Court Act and addressed an order that was immediately appealable under Rule 604A1. Of course, in DeJesus, I think that was a termination of an ongoing criminal proceeding. And also the same was true in the Martin case. It was the denial of a transfer. That certainly was a final order. In each case, was it not? Well, they were still As opposed to the evidentiary ruling that we have here. That's correct, Your Honor. Both of those cases did involve the foreclosure of proceedings in criminal court. But that type of factor is not a distinguishing factor for our purposes. Basically, because the Juvenile Court Act has been amended so that juvenile delinquency proceedings look now virtually the same as criminal proceedings, that type of distinction isn't as relevant as it was back before the amendment. For the same reasons that an interlocutory appeal should be allowed in a criminal proceeding, it should be allowed in a delinquency proceeding, given that virtually all of the constitutional requirements, all of the rules of evidence, all the procedural safeguards that are available in a criminal case are available in a delinquency proceeding, especially given that double jeopardy applies in both a criminal proceeding and a delinquency proceeding. In People v. Young, this Court reasoned that one of the main purposes or one of the main reasons that the people are allowed to appeal an interlocutory order that suppresses evidence and substantially impairs the people's ability to prosecute its case was because double jeopardy applied in a criminal proceeding. The people are not allowed to appeal from a judgment of acquittal in a delinquency proceeding. And so unlike the juvenile who can appeal from a suppression order at the end of a delinquency proceeding, the people aren't entitled to that same right of appeal. And this Court found that it would be manifestly unfair for the State's case to be weakened due to an erroneous suppression order that was entered during a trial. So what we could have is a situation where erroneous suppression orders and errors favoring juvenile offenders could always go uncorrected, but while errors favoring the State would always be rectified. And to the extent that those types of errors that are allowed to proliferate at the trial court level, that could result in the distorted development of the law. But even more importantly, that would harm the truth-seeking function of a trial. And this Court has essentially said that the main purpose of trial is so that the determination of the guilt or innocence of an individual is to be discovered. And if the people are not allowed to appeal an erroneous suppression order that was entered during a delinquency proceeding, it's possible that a juvenile who's in need of rehabilitation will not get that rehabilitation and they could be reintroduced into society without getting that necessary rehabilitation. So this Court is going to be concerned with balancing the interests of the people, which is essentially to get to the truth of the charges, and also the interests of the juvenile, which is avoiding unnecessary delay. And admittedly, while the juvenile does have an interest in avoiding delay, that interest can be minimized given what we discussed before, that these appeals can be expedited. And in addition, this Court has already recognized that even though the juvenile has that interest, that interest is outweighed by the people's interest in having these types of interlocutory orders subjected to appellate review. That was this Court's main concern in People v. Martin. This Court found that certain types of orders that were entered in Martin, those should not be totally immunized from review. And that was one of the main reasons that this Court found that those orders should be subject to appellate review. Consider the fact that the juvenile's interest would be harmed, that interlocutory appeals would undermine, would unnecessarily prolong a trial, but found that given that balancing, the people's interest in having these orders subjected to review outweighed that interest. And this is also consistent with the recent change to the Juvenile Court Act, which made delinquency proceedings essentially the same in practice and purpose to criminal proceedings. Even though rehabilitation remains one of the main goals of a delinquency proceedings, this Court has consistently acknowledged that the primary purpose of delinquency proceedings now is to punish the juvenile and to protect society from the effects of juvenile crime. So even though, you know, and this is also similar to the, you know, Your Honors, have no further questions. We would ask that this Court reverse the judgment of the appellate court dismissing the people's appeal. Thank you. Good morning, Your Honors. May it please the Court, Counsel. The trial court in this case ruled I'm so sorry. My name is Jacqueline Bullard. I represent the appellate KEF and I'm an assistant defender at the Office of the State Appellate Defender. The trial court in this case ruled that the complainant's hearsay statement was admissible pursuant to Section 115.10. What the State is appealing from is the trial court's requirement that it conduct a direct examination of the complainant about the substance of the claims against the minor in conjunction with the introduction of that videotape. The State is correct. The issue before this Court is narrow. It is the jurisdiction of the appellate court to entertain an appeal from this particular order. The appellate court's dismissal in this case can be affirmed on either one of two grounds. The first of which is even if Rule 604A1 applies in delinquency proceedings, this was not in the nature of a suppression order. Under the alternate grounds for relief, it would be that the current version of Supreme Court rules do not authorize the application of Rule 604A1 in delinquency proceedings. This Court, in determining whether an order is a suppression order or not, has always focused on the substantive effect of the order. And the State correctly observes that in many cases, including Phipps, this Court has focused on the moment that the trial court ruled that evidence could not come in, at that moment the order became a suppression order. Ms. Bullard, why isn't de Jesus controlling in this matter? I beg your pardon? Why isn't the case de Jesus controlling? De Jesus, like Martin, foreclosed the State from proceeding in criminal court. In de Jesus, the question was the State had, the minor had been automatically transferred to adult court. However, she had only been convicted of an offense that was not an automatic transfer case. Under those circumstances, in order to sentence that minor as an adult, the State was required to file a motion to have that minor nonetheless sentenced as an adult. The State did that in that case, and the trial court denied the motion. And the case would have been proceeded as if the minor had been sentenced as a minor. Rather than appealing that order, the State went judge shopping, went to another judge, couched the argument in terms of the constitutionality of the statute, and that judge allowed the motion to sentence the minor as an adult. So the issue came about indirectly in de Jesus. The particular question in this case, the argument based on the plain language of Rule 604 and the plain language of Rule 660, simply wasn't before this Court in that case. And again, in addition, it precluded the State from proceeding against the minor in criminal court, just as it did in Martin. Arguably, and I'm sure it's your argument, that the condition placed upon the State was a legitimate condition. But if we think of situations where a judge puts a less than legitimate condition on something and wouldn't be technically suppression of the evidence if they complied, but there was no way the State could comply, we wouldn't look at that situation as a suppression order. That issue could never be appealed, could it? Well, Your Honor, I do think that under the current case law and the status of the rules, that you could reach an issue like this, the type of issue that you talk about in your hypothetical. In Truett, what Truett says is when the trial court suppresses evidence, or the claimed order is that it suppresses evidence, but really what the order does is it expands the amount of evidence that's put before the trier of fact. Under those circumstances, it's not a suppression order. In Truett, you could say the same thing about the order in Truett. In Truett, the State wanted to introduce a hearsay lab report from a lab employee, rather than calling the employee herself to testify in the case. And what the trial court said is, if you want to introduce that hearsay document, you also have to call the lab employee and have the lab employee testify. That ruling expanded the amount of information that was before the court. It increased the truth-seeking function of the trial. And in addition, as in this case, the State had it wholly within its power to get the evidence that it sought to be introduced. All it needed to do in Truett was to call the lab employee. In this case, all the State was required to do was to conduct a direct examination of its complaining witness about the substance of the allegations against the minor. But didn't the defense counsel have an opportunity to cross the minor when the minor was on the stand and chose not to? The scope of the State's direct examination was essentially to lay a foundation for the hearsay tape. And again, the State's correct. I think if we wander too far down the path of the correctness of the trial court's order, it really complicates the application of this rule. But in this case, the State essentially laid the ball in the lap of the defense to make its own case for it. To ask the State's own complaining witnesses questions that are going to be incriminating. It's not the defense's job to make the State's case for it. It's also, although the State is also the issue. Isn't the issue one of opportunity rather than having done it, cross-examination? In this case, though, the defense did not have the opportunity to cross the complainant about her testimony about the offense itself. The State waived any objections to scope? But if we allow the State to waive objections, scope-related objections in any case where Your problem is that there's a manipulation of the record? That is certainly part of it. Another is that the reason that the State gave in the case for not wanting to conduct a direct examination was contrary to established case law. The State claimed that the purpose of Rule 115.10 was to avoid having child complainants testify about the circumstances of the offense at trial. This Court in Bowen recognized that's not the purpose of Rule 115.10. It was the purpose for an older version of a videotaped statute where children were allowed to testify by videotaped statements. But the purpose of 115.10 is to bolster the testimony of a child. Because these particular types of offenses are viewed as being particularly difficult to prosecute and prove. Back to the not being able to appeal. I mean, you never know in a situation like this. Maybe the State made a promise to the parent not to go into it. Maybe the State legitimately feels, as they stressed here, that the trauma of going into it twice would be too much for this child. And they make the decision they can't go forward. If, indeed, they haven't met their burden in some respect, the defendant should be happy about that, not upset about the fact that the burden wasn't met during the direct testimony of the child. But I go back to the point where if they're in that situation where they feel they can't proceed and we don't allow an interlocutory appeal because, under your position, it isn't technically a suppression because they could have done something to get that information in, they're really in a catch-22, right? Because that issue will never be appealed. Never be subject to appeal. Your Honor, I would disagree with you in some respects because this was not a uniquely juvenile appeal. One of the arguments, and this sort of shifts over to the rule-based argument, is the notion that these type of appeals shouldn't be allowed in juvenile cases. And the state's interest in this court's interest in the consistent development of a body of case law is undermined if we foreclose these types of appeals. It doesn't substantially undermine that interest because this particular issue, the issue of whether the state can put a witness on the stand and not examine the witness about the substance of the complaints, could just as easily be raised in an adult appeal. If the state tries this particular tactic in an adult appeal and files a notice of appeal, it's a different issue. In this case, this case is dealing with the state's ability to appeal in juvenile cases. And so many of the concerns about issues evading review are not really going to be an issue because so few juvenile appeals are taken in the first place. So many of the issues, the issue in this case, the legitimacy of a search and seizure, all of those issues can still be raised in state appeals in adult cases. So the body of case law governing these issues will continue to develop without being particularly damaged by not being allowed to appeal a handful of juvenile cases in a particular year. I want to go back just a little bit towards Truitt and talking about Truitt and the state's focus on that whole notion that it becomes a suppression order at that very moment in time when the trial judge rules that the evidence can't come in. The exact same thing was true in Truitt. In Truitt, the trial judge said the hearsay statement is not coming in unless you call a witness. So at that moment in time in Truitt, the order on its face, you know, appears that it could indeed be a suppression order. But this court went one step further in Truitt. And in Drumm, it further reaffirmed that in certain cases what the role of this court in evaluating jurisdiction looks not just to whether the trial court said you may not introduce that evidence. The focus is also on whether the exclusion of that evidence resulted in less evidence coming before the court, whether it resulted in less evidence coming before the court. So all of the concerns that occurred in Truitt are likewise present in this case. Even if this court disagrees that this particular case involved a suppression order, the plain language of current Supreme Court rules do not allow for state appeals in delinquency cases. The Illinois Constitution allows only appeals from final judgments, the exception being this court's rulemaking authority to create exceptions for interlocutory appeals. In 1975, this court created Supreme Court rule 660, governing delinquency appeals. And that rule reads, appeals from final judgments in delinquency proceedings shall be governed by the rules applicable to criminal cases. If this court, or when the court had drafted these rules, had intended to encompass all cases, including interlocutory appeals, it simply is final judgment. There is a presumption that when a statute or rule is drafted, the drafters intended what they said. Further support for this is demonstrated in rule 604A1, which is the Supreme Court rule that governs adult state appeals in adult cases. And in that rule, the rule reads, in criminal cases, the state may appeal only from, and it lists a list of circumstances under which the state could appeal. Removing that phrase, in criminal cases, would do no violence to the language of that statute. All of the 600 related rules are related to criminal proceedings. So it was not necessary to put in the phrase, in criminal cases, the state may appeal from. Because the rules themselves are dedicated to criminal rules, and all of the rulings that are listed in that rule are all criminal related rulings. Speaking of that language, going back to 660, that also refers to rules applicable to criminal cases, doesn't 660A rather evidence and intent that the same rules that apply in criminal cases will apply in juvenile cases? It does in the case of final judgments. And the fact actually that that particular rule uses the phrase, final judgments in delinquency proceedings, and then talks about rules applicable in criminal cases, it's an internal recognition that there is a difference between delinquency proceedings and criminal cases. And the fact that the rule was limited at the beginning to final judgments. So it's your position that there are no interlocutory orders, even a motion or the granting of a motion to suppress evidence in a juvenile case which would effectively terminate the prosecution, is that correct? Our position in this case is that rule 604A1 does not apply to juvenile cases. And this particular case addresses the very narrow issue of suppression orders. But based on the plain language of the rules, no, it does not appear that any of the rule 604A would apply. So the state or the people would never have an opportunity to appeal an erroneous ruling because an acquittal ends the matter? In a delinquency matter, that is correct. You're saying that's based on our rules? Yes. Yes, Your Honor. The state discussed a little bit about the desirability of expediting juvenile appeals in this case. And I don't think you're going to get an argument really based on all of the expert opinion that expediting juvenile appeals is an excellent idea. But in this case, this case is governed by the state of the rules in existence at this time. And the language of the rules, in effect, at the time that the state appealed this particular case did not authorize appeals, state interlocutory appeals. The notion that juvenile appeals, that this court should not allow juvenile interlocutory appeals is supported by sound public policy and the types of balancing tests that this court has employed in other cases when evaluating the scope of the state's right to interlocutory appeals. Essentially, this court's balance, the interests of the accused, the interests of the judicial system, and the interests of state society. In juvenile cases, that calculus changes substantially based on first the unique nature of children as opposed to adult defendants, and also on the differences between the criminal code, the criminal law, and delinquency proceedings. Minors in particular are affected by delays in ways that adults simply aren't. Anxiety, stress, fear, those sorts of issues arise in any case where the proceedings are delayed and the state takes an interlocutory appeal. But in the case of juveniles, it actually can damage their cognitive development, it can undermine their trust, trust issues and security issues. Those are all issues that are necessary for rehabilitation. If the minor sees the system as unfair, if the minor walks into a courtroom and the proceedings drag on and on and on, the minor is very likely to see the proceedings as unfair and be much more resistant to intervention by the adults, by the court who are trying to help the minor through the rehabilitative process. Ms. Bullock, are there any policy considerations with regard to minor victims? Not in the case of allowing appeals for delinquents. Those issues, the issues of juvenile victims in a case are dealt with in a separate body of case law. This argument about whether juveniles should be allowed to appeal or not, this argument is not unique to just those cases that involve juveniles accused of sex crimes. It applies to juveniles accused of shoplifting or burglary or vandalism. And the rule has to cover all of those instances, not just instances where the victim may be sympathetic. In addition, delays damage family relationships with juveniles and the passage of time actually because of the way juvenile brains develop, break the connection between the action and the consequence that's imposed. All of these things about juveniles undermine their ability to be rehabilitated if we don't deal with these cases in an expedited manner. The judicial system and society both do have an interest in the consistent development of a body of case law. But as I discussed a little earlier, the body of case law developed regarding suppression orders and search and seizure, those will all continue to develop in adult cases from state appeals regardless of whether juvenile cases are the subject of appeals or not. And finally, the stakes simply are not as high in juvenile cases in terms of correcting erroneous orders. Obviously, the society and the legislature has determined that despite the fact that they amended the statute and made juvenile proceedings more adult-like in many respects, the act continues to focus on rehabilitation in a way that it does not in adult cases. The legislature limited severely the length of time that a juvenile can be incarcerated, for example, for an offense. Juveniles can only be held up until age 21. The legislature also limited the circumstances under which a 12-year-old juvenile can make an order of imprisonment. A trial court can only order the imprisonment of a minor if it's in the best interest of the minor and the public or if it's necessary to protect public safety. In contrast, in adult cases, adult defendants can be sentenced to prison for a variety of reasons unrelated to rehabilitation in terms of just pure punishment. I want to get back to one other thing. Under 115-10, I think the judge indicated it was not going to allow the statement because there was no direct testimony or there was no direct examination of KMF. Is that section directed at giving the defendant an opportunity to cross-examine? And why couldn't we say the defendant had that opportunity here? The defendant had an opportunity to cross-examine based on the state's direct examination, based on the foundation of the hearsay statement. The state still didn't put on any testimony from the complainant about what had occurred. There is a difference in giving testimony that is sworn in a courtroom with all of the formality that that brings, all of the gravity that brings to a witness on the stand to actually have to face the person that the complainant is accusing. That lends a degree of reliability to testimony and statements. That statements made that are unsworn outside of a courtroom setting simply don't have. I see that my time has expired and I would respectfully request that you affirm the appellate court's decision. Thank you. Thank you, Your Honor. Just a few quick points on rebuttal. Your Honors, we're concerned with whether or not not allowing these types of orders to be allowed in a delinquency proceeding would mean that the people would never be allowed to appeal these orders. They would effectively be insulated from appellate review. And that is one of the main reasons that this court allowed those types of orders to be subjected to appellate review in Martin, because it was concerned that the trial court could enter these orders and the people would never be able to review the propriety of those orders. And now given the discussion that we've had today about the merits of the case, which again have to do with whether or not the people, that has to do with the issues in the people's underlying appeal, given the discussion about the Confrontation Clause, this is an important issue that deserves appellate review. Whether or not the respondent here had the opportunity to cross-examine, all those are important issues that because the rules of evidence in the Confrontation Clause applies in delinquency proceedings, that's one of the reasons that these types of orders should be subjected to review. The trial court here suppressed an important piece of evidence in the state's case. It was a piece of evidence that essentially without that evidence the state could not continue its prosecution of the case. And so this case is essentially over. And so even though we were talking about how these issues are not likely to arise in a delinquency proceeding, there's still the possibility that they could arise in individual cases. And the people have an interest in each individual case to see that a juvenile who's been charged with an offense is adjudicated delinquent of that offense, and that in doing so the people have an opportunity to rehabilitate that juvenile, have an opportunity to punish that juvenile, and so that society ends up being protected. So there is something to be said about having these orders correctly entered. And here, again, given our discussion, there is a possibility that the trial court incorrectly entered the order here, that not allowing the state or not allowing this evidence to be admitted was not a violation of the Confrontation Clause. Just to get into the merits just a little bit, this court in Sutton and then the appellate court precedent that's currently occurring now, People v. Bryant, held that there is actually not, there probably isn't a Confrontation Clause violation in this case, because the Confrontation Clause only guarantees the opportunity for effective cross-examination, not the, not cross-examination in whatever way and to whatever extent defense counsel may wish to cross-examine. And here KMF was on the stand. She answered all the questions on direct examination. She answered all the questions on cross-examination. She was available to be subjected to further cross-examination, but Respondent's Counsel chose not to do that. And any questions that go to whether or not the people were required to prove their burden in this case and defense counsel was required to do the state's job for them, all this goes to the weight of her credibility as a witness, not to, again, whether or not the trial court's order in this case had the substantive effect of suppressing evidence. And I think we, by looking at the reason that the people chose not to comply with the trial court's order in this case, that necessarily gets into a merits-based determination of the issue. And that's one of the reasons that this Court essentially just looks at the substantive effect of the order at the time that the order was entered. And this is perfectly consistent with what Federal case law does. And that's one of the reasons that Federal case law just looks at the effect of the order at the moment that the order was entered. And this Court has consistently looked at whether to not do that. You look at Section 3731, because 18 USC Section 731 is the analogous Federal rule. This Court has looked in the past to that rule and how Federal case law has interpreted that rule. And under Federal case law, it's well established that even where an order is conditional and the government does not comply with that condition, that does not affect the appealability of the order, and the Seventh Circuit's decision in United States v. Parks is directly on point. The Seventh Circuit held that that order in that case was an unambiguous suppression order. Now, whether or not the, you know, the people chose not to comply with the order in that case and whether or not that was a good reason, that really goes to the merits of the appeal. It's possible that the people would be able to appeal that order, but the people would eventually lose the appeal, because the reason or the propriety of the order, the reason that the people chose not to comply with the order, that might not have been a good reason, and the trial court's order was essentially correct. But the people are simply asking here for the opportunity to have that type of order, a suppression order that substantially impairs the people's ability to prosecute its case, be subjected to some type of appellate review. We also had an earlier discussion about whether the appeals could be expedited, and there is an indication in the transcripts that the trial court noted that this appeal could have been expedited, but the appeal, for whatever reason, was not expedited in the appellate court. So the opportunity to have this appeal expedited could have occurred. Turning quickly to the DeJesus issue, Respondent argues that DeJesus is non-binding, because the language of the rule was not in dispute at the time that this Court decided DeJesus, but this Court still held in DeJesus that Rule 660A incorporates Rule 604A1 into delinquency proceedings, and this Court allowed interlocutory, this Court allowed appeals under Rule 604A1 in orders that were discussed in Martin and DeJesus were appealable under Rule 604A1. If this Court has any questions, we ask you to reverse the judgment of the appellate court. Thank you. Thank you, counsel. Case number 107-402 will be taken under advisement as a result of the Court's decision to suspend the trial.